IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTWON WHITTEN, )<br>    Plaintiff, )<br>v. )<br> )<br>LESLIE FLEMING, *et al.*, )<br>    Defendants. ) | Civil Action No. 7:16CV00229<br><br>By: Elizabeth K. Dillon<br>United States District Judge |

**MEMORANDUM OPINION**

Antwon Whitten, a Virginia inmate proceeding *pro se*, filed this action under the Civil Rights Act, 42 U.S.C. § 1983. In his amended complaint, Whitten alleges that the defendants violated his constitutional rights related to a disciplinary conviction. Having reviewed the record, the court concludes that the defendants' motion to dismiss must be granted.

I. BACKGROUND

On the morning of October 31, 2015, Whitten was in a fight with his cellmate inside Cell A-136 at Wallens Ridge State Prison.[1] Whitten claims that while he slept, the cellmate, C. Brown, touched Whitten's buttocks. Whitten admits that he then "assaulted [Brown] with a weapon." (Amend. Compl. ¶ 26, Dkt. No. 15.) As the inmates were fighting, Officer Lawson arrived and sprayed mace into the cell. Whitten alleges that other officers arrived, pulled Brown from the cell, and ordered Whitten to turn on his stomach, which he did. According to Whitten, Officer Gunter then entered the cell with a canine and "allowed the dog to maul [Whitten]." (*Id.* at ¶ 27.) Whitten suffered numerous dog bites to his underarm, back, and the back of his head

---

[1] This summary of facts is taken from Whitten's submissions, including a photocopy of a written summary of the evidence presented during disciplinary proceedings on the charges stemming from the altercation with his cellmate. (*See gen.* Compl. Ex., Dkt. No. 1-1.) Whitten implicitly incorporates this summary into his amended complaint as his description of the hearing evidence; except as noted, he does not dispute the summary's accuracy.

that required more than 50 sutures. The prison medical staff sent both inmates to a local hospital for treatment of their injuries.

Later that day, Whitten was served with a disciplinary offense report (DOR), charging him with offense code 100: killing or attempting to kill any person. The DOR gave the following description of the offense: "October 31, 2015 at 10:13 am I K-9 officer Gunter responded to a 1018 in cell fight call via radio in A-1 pod. When I arrived to A-136 that housed offender[s] [Whitten and Brown] I observed offender A. Whitten on top of C. Brown on the floor stabbing C. Brown in the face area." (Compl. Ex., at 18, Dkt. No. 1-1.)

Whitten received written notice of the charge and filed written requests for witness statements and documentary evidence in preparation for his disciplinary hearing. Hearing Officer C. W. Franks conducted the proceeding on November 13, 2015, with Whitten and Gunter, the reporting officer, present. Whitten denied that he had attempted to kill anyone. He stated that by the time Gunter arrived, the fight was almost over, and Brown was biting Whitten's fingers. He denied that Gunter had seen him stabbing Brown at that time as stated in the DOR. Whitten also claimed that Brown had received only one wound and it was not life threatening. Franks withheld ruling on Whitten's written request for the pod security camera footage, saying that he "would have to be convinced during the course of the hearing to look at the security camera" footage. (*Id.*, at 13.)

Officer Lawson's witness statement said: "I . . . was the first officer on scene. When I seen them they was on the ground fighting. There was an excessive amount of blood coming from [Brown] and [Whitten]. The injuries I seen was consistent with a weapon being utilized." (*Id.*, at 28 and 30.) Whitten had also requested a statement from Officer Cooke, because he believed Cooke could say which inmate was on top when the cell door was opened. (*Id.*, at 31.)

2

Cooke's statement said: "When I arrived at the cell you [Whitten] were on top of Offender Brown." (*Id.,* at 32.)

During the hearing, Gunter testified as follows. When he arrived in A1 pod, he saw Cooke and Lawson standing in front of cell A136, with the tray slot open. He and his canine, Bert, went to the cell, where Gunter saw Whitten on top of Brown "with Whitten making stabbing motions toward Brown's face." (*Id.,* at 14.) Gunter radioed a report that the fight involved a weapon, asked the control booth officer to open the cell door, and then entered the cell and "engaged" Bert on Whitten. (*Id.*) The inmates separated; Brown rolled under the bunk, and Whitten rolled to the opposite side of the cell. Another officer called for Brown to crawl out the door, but Brown did not respond. He turned toward Gunter, who then saw the wounds to Brown's face. While another officer assisted Brown out of the cell, Gunter ordered Bert off of Whitten.

In response to Gunter's testimony, Whitten repeated his claim that when the cell door opened, he was on his back with Brown biting his fingers. He also claimed that the officers had removed Brown from the cell *before* Gunter and Bert entered and that Gunter had "allowed the dog to bit[e him] 'all over the place.'" (*Id.,* at 14.) Whitten asked Franks to review the pod video to prove this sequence of events.

Franks stated that the actions relative to the charge had occurred *inside* the cell. He also stated that from his own observation of Brown's face after the incident, it was clear that Brown had sustained more than one wound and that his wounds could quickly have become life threatening. Franks also referred to Gunter's account of seeing, through the cell window, Whitten stabbing Brown in the face. Franks said he "would be hard pressed to see how that

3

action could not be perceived as intent to kill." (*Id.,* at 15.) Based on Gunter's testimony, Franks refused to view the pod video.

Whitten asked Gunter why he had allowed Bert to bite him numerous times. Whitten claimed that the location of the dog bites on his back, legs, and head proved that he had not resisted. Gunter said that the bites were consistent with his account that Whitten was on top of Brown when Gunter and Bert entered the cell. Gunter said Bert had kept Whitten under control until Brown was safely out of the cell and Whitten had complied with the officers' orders.

Gunter stated that he had seen a weapon resembling a piece of glass about four inches long and two inches wide. According to the written summary of the hearing evidence, Gunter testified that Whitten "had used both hands stabbing toward Brown's facial area." (*Id.,* at 15.) Whitten claims that Gunter actually testified to seeing Whitten "on top of Brown punching him with (1) hand and stabbing him with the other." (*Id.*, at 9.)

Based on the hearing evidence, Franks found Whitten guilty of offense code 100, attempting to kill any person. As a penalty, Franks ordered Whitten to pay restitution to the state of $12,536.00, the total cost of treating the two inmates' injuries.

Whitten appealed the conviction and restitution. In reviewing the appeal, Warden Fleming concluded that the finding of guilt was adequately supported by Franks' description of Brown's wounds as substantial, and by Gunter's testimony about seeing a weapon and seeing Whitten on top of Brown "making stabbing motions toward Brown's face using a weapon." (*Id.*, at 16.) Fleming also found no due process violation and upheld the restitution award as "appropriate and within the range of allowable penalties" under VDOC policy. (*Id.,* at 16-17.)

Whitten appealed Fleming's ruling to the regional administrator, defendant Marcus Elam, who sustained the finding of guilt. Elam stated:

> After carefully reviewing all the evidence provided, it is clear to me that you would not have suffered the injuries you did had you not been involved in an altercation which could very well have ended with the death of the other individual involved.
>
> Upon review of all documents submitted, this office finds no procedural errors. Thus, based on the preponderance of evidence against you, the charge is **UPHELD.** However, during the investigation of your charge, it came to my attention that the restitution amount you were charged was incorrect. . . . [Y]our new penalty will be **Restitution in the Amount of $6952.24**.

(*Id.*, at 1-2.) Whitten then appealed unsuccessfully to Henry J. Ponton, the unit head of the VDOC disciplinary appeals.

In his amended complaint, Whitten sues Fleming, Franks, Gunter, Elam, and Ponton, for alleged due process violations during the disciplinary proceedings. Whitten states that he has never denied using a weapon against Brown, but contends that "[a]t no time was a weapon being used or displayed in the presence of any [VDOC] staff in . . . A1-cell 36 on 10-31-15." (Amend. Compl. ¶ 28, Dkt. No. 15.) Liberally construed, Whitten's claims are that: (1) Franks denied Whitten's request for the pod video as documentary evidence to contradict Gunter's testimony; (2) Franks violated VDOC policy by finding Whitten guilty of attempting to kill Brown based on the same evidence used to find him guilty of a separate charge for fighting; (3) on appeal, Fleming and Elam failed to review the video footage to address the claim that Gunter falsely charged Whitten with attempting to kill Brown; (4) Elam's reduction of the restitution amount on appeal proves that Gunter's testimony was false; (5) Elam replied to Whitten's appeal outside the time limit set by VDOC policy; (6) Ponton violated VDOC policy by failing to give an opinion in response to Whitten's appeal; (7) Gunter falsely charged Whitten with attempting to kill Brown with no evidence to support such a charge; and (8) Gunter used excessive force when he ordered his canine to bite Whitten after Brown was already out of the cell and Whitten was on his "stomach as ordered." (*Id.* at ¶ 27.) As relief in this action, Whitten seeks to have the

disciplinary charge expunged and to recover monetary damages. The defendants have filed a motion to dismiss, and Whitten has responded, making this matter ripe for disposition.

II. DISCUSSION

A. **Excessive Force Claim**

Whitten concedes, and court records reflect, that in his separate civil action, *Whitten v. Clarke, et al.,* No. 7:16CV00195, he is pursuing a claim identical to Claim (8) in this case. Both claims allege that Gunter's use of the canine on October 31, 2015, was excessive force in violation of the Eighth Amendment. The parties agree that the court should address the excessive force claim only in *Whitten v. Clarke* and not in this case. Accordingly, the court will dismiss Claim (8) without prejudice and will address here only Whitten's other claims that the court construes as due process challenges.[2]

B. *Heck v. Humphrey* **Decision Inapplicable**

The defendants argue that Whitten's § 1983 claims about his disciplinary conviction are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). The court cannot agree.

Under the ruling in *Heck*, "a state prisoner's § 1983 action is barred . . . if success in that action would necessarily demonstrate the invalidity of [that prisoner's] confinement or its duration," unless the prisoner proves that the challenged criminal or disciplinary conviction has been terminated in his favor. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (interpreting *Heck* holding); *see also Edwards v. Balisok*, 520 U.S. 641, 647-48 (1997) (applying *Heck* to § 1983 claim seeking restoration of good conduct time forfeited as penalty for prison disciplinary

---

[2] Whitten asserts that the defendants' actions during the disciplinary proceedings also constituted deliberate indifference to the adverse effects the conviction would have on him, in violation of the Eighth Amendment. He provides no factual basis for such a claim, however. An Eighth Amendment deliberate indifference claim requires evidence that the defendants' actions or omissions caused the plaintiff "a serious or significant physical or emotional injury." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). Whitten does not present evidence that he suffered any such injury as a result of the disciplinary conviction or penalty. Therefore, the court will grant the defendants' motion to dismiss as to any Eighth Amendment claim related to the disciplinary proceedings.

conviction). Thus, when an inmate's § 1983 claim about a disciplinary conviction, if successful, could shorten his term of imprisonment through the restoration of forfeited good conduct time, the claim is barred under *Heck*, unless he first proves that the conviction has been terminated in his favor, through habeas proceedings or otherwise.

The favorable termination requirement in *Heck* and *Balisok* does not apply, however, to claims challenging a prison disciplinary conviction that do not call into question the fact or length of the inmate's term of confinement. *See, e.g., Balisok*, 520 U.S. at 648; *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam) ("*Heck*'s requirement to resort to state litigation and federal habeas before § 1983 is not . . . implicated by a prisoner's challenge [of special disciplinary confinement] that threatens no consequence for his conviction or the duration of his sentence"). The record does not indicate that Whitten's disciplinary conviction under challenge resulted in any loss of earned good conduct time, and the restitution order imposed on him had no effect on the length of his confinement. Thus, Whitten's success in this § 1983 action would not imply the invalidity of that term of confinement, and his current claims are not barred under *Heck*. Nevertheless, because the court concludes that Whitten's Claims (1) through (7) do not state any actionable due process claim, the court will grant the defendants' motion to dismiss.[3]

## C. No Due Process Violations

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated "a right arising under the Constitution or laws of the United States." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). The Due Process Clause

---

[3] Consistent with the governing standard of review for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept Whitten's factual allegations as true and construe them in the light most favorable to him. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010). A motion to dismiss challenges the legal sufficiency of a plaintiff's complaint to determine whether he has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To avoid dismissal, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

7

of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). The court will presume that Whitten is alleging that imposition of the restitution order constituted deprivation of his property interests without due process. Due process requires notice and an opportunity for a hearing before a person is deprived of a protected property interest. *Logan v. Zimmerman*, 455 U.S. 422, 428 (1982). Taking his submissions in the light most favorable to him, however, Whitten does not state any actionable claim that he was deprived of due process.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Rather, before an inmate facing a disciplinary charge may be penalized with loss of a protected interest, he is entitled to these limited procedural protections: (a) advance written notice of the charges, (b) a hearing before an impartial decision maker, (c) the opportunity to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and (d) a written decision setting forth the evidence relied upon and the reasons for the disciplinary action. *Id.* at 563-71.

Judicial review of a prison disciplinary action is limited to whether the requirements set forth in *Wolff v. McDonnell* were met and whether there is "some" evidence to support the hearing officer's finding. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence" in the record that could support the decision. *Id.* at 455-56. A reviewing court's obligation is not to

8

assess the comparative weight of the evidence; rather, the court must uphold the ruling of the disciplinary officer so long as "the record is not so devoid of evidence that [the officer's] findings were without support or otherwise arbitrary." *Id.* at 457.

The court finds that Whitten received the procedural protections required under *Wolff*. His submissions reflect that officers provided him with advance notice of the disciplinary charge, a chance to request and obtain witness statements, and ample opportunity to present his own testimony, evidence, and argument to Franks at the hearing. Whitten asserts no claim in the amended complaint that Franks lacked impartiality and states no factual basis for such a claim.[4] After the hearing, Franks issued a written statement of the evidence on which he relied in finding Whitten guilty of the charge. Moreover, in response to Whitten's first appeal, Fleming provided him with a written summary of all the evidence adduced at the hearing, as well as a restatement of Franks' reasoning and Flemings' own conclusion on appeal.

The court also finds that Franks had some evidence from the officers' testimony and the nature of Brown's injuries to support the finding of guilt. Lawson said he looked into the cell first and saw Whitten and Brown fighting and excessive blood on the inmates, consistent with the use of a weapon. Cooke said he looked in next and saw Whitten on top of Brown. Gunter said when he looked into the cell, Whitten was on top of Brown and making stabbing motions at Brown's facial area. Brown suffered multiple wounds, including cuts to his face that Franks believed could easily have become life threatening. Thus, under the lenient evidentiary requirement set forth in *Hill*, the court cannot find that Franks had no factual support for his

---

[4] In response to the motion to dismiss, Whitten argues that Franks' comments about observing Brown's injuries from the fight show that Franks personally saw Brown and was thereby somehow prejudiced against Whitten. The extent of Brown's injuries were clearly relevant evidence that Franks could fairly consider during the disciplinary proceedings, whether he had seen Brown's injuries in person or in a photograph. Thus, the court concludes that Whitten has failed to present a factual basis for an actionable claim that Franks failed to act as an impartial hearing officer.

9

conclusion that Whitten attempted to kill Brown or that his finding of guilt was otherwise arbitrary.

In Claims (1) and (3), Whitten complains that Franks, Fleming, and Elam deprived him of exculpatory evidence by refusing to review the pod video footage. At the hearing, Whitten claimed this footage would prove that Brown was removed from the cell before Gunter came in with the canine.

> Procedural due process . . . requires prison disciplinary officials to disclose material exculpatory evidence to the charged offenders. *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). However, prison disciplinary officials need not permit the presentation of irrelevant or repetitive evidence in order to afford prisoners due process in disciplinary proceedings. *Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992).

*Scruggs v. Jordan*, 485 F.3d 934, 939-40 (7th Cir. 2007). As Franks stated during the hearing, all "actions that were relevant to the charge occurred inside the cell." (Compl. Ex., at 15, Dkt. No. 1-1.) It is undisputed that the pod video would not show that activity. Whether or not Brown was pulled out of the cell before Gunter and his dog entered the cell is not relevant to show what Gunter saw Whitten doing inside the cell before the door opened.[5] Thus, the court cannot find that Frank's refusal to review the video footage constituted a deprivation of relevant, exculpatory evidence.

Claims (2), (3), (5), and (6) allege violations of the VDOC disciplinary policies regarding multiple offenses and appeal procedures. None of these alleged violations implicates any of the constitutionally mandated procedural protections set forth in *Wolff*. While state regulations may provide for more stringent procedural protections than the Due Process Clause requires, "a state's failure to abide by its own law as to procedural protections is not a federal due process

---

[5] The court notes that these disputed facts about timing, while not relevant to disposition of the claims in this case, may be relevant to Whitten's excessive force and bystander liability claims in his other § 1983 action, *Whitten v. Clarke, et al.*, No. 7:16CV00195.

issue." *Brown v. Angelone*, 938 F. Supp. 340, 344 (W.D. Va. 1996) (citing *Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990)). Therefore, with no claim under federal law, Whitten has no cognizable § 1983 claim against the defendants for the VDOC policy violations alleged in these claims.

Whitten's Claim (4) asserts that Elam's reduction of the restitution amount proves that Whitten did not attempt to kill Brown. Liberally construing Whitten's submissions, his argument is that Elam reduced the restitution after learning that all of Whitten's injuries were caused by dog bites. Elam did not state, however, the reason that he found the restitution amount to be incorrect, and he also upheld the finding that Whitten was *guilty* of attempting to kill Brown. Because that finding of guilt is fully consistent with Whitten's only injuries being dog bites, the court concludes that Elam's amendment of the restitution order does not prove any due process infirmity in the disciplinary proceedings.

Claim (7) alleges that Gunter falsely charged Whitten with attempting to kill Brown. A false disciplinary charge by itself does not violate an inmate's right to due process, if he is thereafter provided with notice and a hearing on that charge. *See Freeman v. Rideout*, 808 F.2d 949, 952-53 (2d Cir. 1986) (finding "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 if the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"). As already discussed, Whitten received all the constitutionally required procedural protections to which he was entitled before being found guilty of the charged misconduct and penalized for it. As such, the court concludes that Whitten has not stated any actionable § 1983 claim against Gunter for a violation of due process.[6]

---

[6] The court notes that Whitten cannot prevail on any claim for monetary damages against the defendants in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). For this additional reason, the court will grant the defendants' motion to dismiss as to all such claims.

## III. CONCLUSION

For the stated reasons, the court will grant will grant the defendants' motion to dismiss Whitten's Claims (1) through (7) for failure to state a claim upon which relief can be granted and will dismiss Claim (8) without prejudice to consideration of that allegation in Whitten's other pending case.

An appropriate order will be entered.

Entered: September 11, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge